IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


EQUAL EMPLOYMENT OPPORTUNITY       :
COMMISSION,
                                   :
        Plaintiff,
                                   :  Case No. 3:06cv302
            vs.
                                   :  JUDGE WALTER HERBERT RICE
UNITRIN SPECIALTY, *et al.*
                                   :
        Defendants.


---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. #20) AND SUSTAINING, IN PART,
AND OVERRULING, IN PART, DEFENDANTS' MOTION TO STRIKE
CERTAIN ASSERTIONS AND MATERIALS (DOC. #25) AND
PLAINTIFF'S MOTION TO STRIKE AFFIDAVITS (DOC. #51);
JUDGMENT TO BE ENTERED ON BEHALF OF DEFENDANTS AND
AGAINST PLAINTIFF; TERMINATION ENTRY

---

Thomas Allmond was employed by Defendant Unitrin Speciality or its

predecessor from 1999 until his termination in 2005.  Unitrin Speciality is a

business segment of Defendant Unitrin, Inc.  Defendant Trinity Universal Insurance

Company is a wholly owned subsidiary of Unitrin, Inc.  (Defendants Unitrin

Speciality, Unitrin, Inc., and Trinity Universal Insurance Company will be referred to

collectively as "Unitrin".)  Plaintiff Equal Employment Opportunity Commission

("EEOC) brings suit against Unitrin, on behalf of Allmond, alleging retaliation for

having complained of age and sex discrimination, in violation of Title VII and the

Age Discrimination and Employment Act ("ADEA").

Presently before the Court are three Motions, to wit: (1) Unitrin's Motion for Summary Judgment (Doc. #20); (2) Unitrin's Motion to Strike Certain Assertions and Materials (Doc. #25); and (3) the EEOC's Motion to Strike Affidavits (Doc. #51). The Court will first address the two Motions dealing with the evidentiary challenges and then turn to an analysis of the Motion for Summary Judgment.

I. MOTION TO STRIKE CERTAIN ASSERTIONS AND MATERIALS (DOC. #25)

Unitrin has filed a Motion to Strike Certain Assertions and Materials that are presented in conjunction with the EEOC's response to Unitrin's Motion for Summary Judgment. Doc. #25. Specifically, Unitrin challenges the following materials filed by the EEOC, as well as various assertions made or citation formats used by the EEOC, in its responsive memorandum:

> (1)  Assertion in its memorandum that fellow employee, Peter Worth, was forced to leave Unitrin (objected to as having no evidentiary support, being based on speculation and a lack of personal knowledge and contradicting Allmond's deposition testimony);[1]

> (2)  Allmond's letter to the EEOC, dated August 31, 2005, which is attached to Allmond's deposition (objected to as not being an affidavit or statement made under oath, containing opinions based on hearsay rather than personal knowledge, being contradictory of Allmond's deposition testimony and not being based on personal knowledge);[2]

---

[1]The memorandum text that Unitrin objects to reads as follows: "the person for whom the company was trying to hire a replacement was an older male product manager who was forced to leave Unitrin." Doc. #21 at 12.

[2]The letter in question is at Document #41, Attachment #4.

2

(3)     Report prepared by EEOC investigator Thomas Feiertag, which
        is attached to Feiertag's sworn declaration (objected to as not
        being made under oath, containing opinions based on hearsay
        rather than personal knowledge, and the fact that source
        documents for the report (to include the report itself) were not
        provided to Defendants because of asserted privileges);[3]

(4)     Hypothetical bonus calculations (objected to as being purely
        speculative);[4]

(5)     Identification of exhibit in memorandum (objected to as being
        misleading).[5]

Initially, the Court addresses the claim that neither the Allmond letter nor the

Feiertag report is properly before the Court because they are not affidavits or

statements under oath.  Federal Rule of Civil Procedure 56 allows courts to

consider "discovery and disclosure materials on file, and any affidavits," in

determining whether there exists a genuine issue as to any material fact, in

summary judgment considerations. Fed. R. Civ. Proc. 56(c).  Further, Federal Rule

of Evidence 901 provides that a document may be properly authenticated by

---

[3]Feiertag's declaration and report are at Document #31.

[4]The calculations are at Document #44, Attachment #13.

[5]The reference to the exhibit, about which the Defendants complain, reads
as follows: "In 2001, Mr. Allmond was promoted to assistant vice president with
the observation, 'Tom is clearly the strongest of our Product Managers.' (Bage dep.
Ex. 22.)" Doc. #21 (Pl.'s Mem. Resp.) at 2.  The Defendants object to the cite to
"Bage dep. Ex. 22", arguing that Ms. Bage did not author the document attached
as Exhibit 22 (from which the quoted material was taken) and that the format of
the cite misleadingly implies that the quote is hers. Doc. #25 (Defs.' Mot. Strike) at
18.

3

submitting "evidence sufficient to support a finding that the matter in question is what its proponent claims," to include "[t]estimony that a matter is what it is claimed to be." Fed. R. Evid. 901(a), (b)(1). Finally, 28 U.S.C. § 1746 allows the substitution of sworn declarations for affidavits, so long as the declaration is dated and subscribed by the declarant as true, under penalty of perjury. In the present case, Allmond properly authenticated his letter in the course of his deposition, and a copy of the letter is appropriately attached to a transcript of that deposition. Doc. #41 (Allmond Dep.) at 184; Doc. #41, Attach. #4. Likewise, the Feiertag report is authenticated in that it is attached to a properly sworn declaration. Doc. #31, Attach. #1 (Feiertag Dec. and Report). Thus, the Defendants' arguments are not well taken, on this point. This does not end the Court's inquiry into the propriety of considering these documents, however, because the Defendants also raise various other objections about the same.

As to the Feiertag Report, the Court takes note of the fact that the EEOC only cites to this report one time in the course of its briefings on Unitrin's Motion for Summary Judgment.[6] See Doc. #21 at 5. The sole text for which this report (along with an unrelated deposition) is offered as support is found in the Facts Section of the Plaintiff's responsive memorandum and reads as follows:

> Ms. Bage admits that the July 29th email was a factor in her decision to fire Mr. Allmond. She felt the email was unprofessional. She

_____

[6]Despite a total of nine pages of arguments about this report, in the briefing on the Defendants' Motion, this fact is not pointed out by either of the parties.

4

> considered it "a violation of trust" and concluded that Mr. Allmond
> could not be "her number 2 if she could not trust him."  Although she
> claims she had contemplated firing Mr. Allmond, his email "sped it
> up."

Id. (citing "Feiertag decl. & Ex. 1" and "Bage dep. vol. 1 at 58-59").  The only

point of factual consequence in this passage, which is later relied on by the EEOC

in its argument, is that the e-mail in question was a factor in Bage's decision to

terminate Allmond. Id. at 17 ("Importantly, Ms. Bage admits that the email was a

factor in her decision to fire Mr. Allmond.").  In response to this assertion, the

Defendants concede (for purposes of summary judgment) that the subject e-mail

was one of the factors that contributed to the termination decision. Doc. #24

(Defs.' Reply Mem.) at 11.  Furthermore, the other deposition to which the Plaintiff

cites in support of this passage is arguably supportive (construing the evidence

most strongly in favor of the nonmoving party, the Plaintiff, in the Motion for

Summary Judgment) of the conclusion that the subject e-mail played a role in

Bage's decision to terminate. Doc. #43 (Bage Dep.) at 58-59.  Thus, there is no

point in the Court spending judicial resources to resolve the questions pertaining to

the propriety of this piece of evidence when none of the contents therefrom are

offered to present, or present, a genuine issue of material fact, in the underlying

Motion for Summary Judgment.  Therefore, the Defendants' Motion to Strike

Certain Assertions and Materials (Doc. #25) is OVERRULED, as moot, to the extent

the Motion pertains to the Feiertag Report.

Further, because the Court has no indication to what extent, if any, the other evidence to which the Defendants object is important to the resolution of the Summary Judgment Motion at issue, the Court is not inclined to expend scare judicial resources detailing the contents of these documents, at this time.[7]  The Court is well aware of the Rules of Civil Procedure and the Rules of Evidence.  To the extent the Court finds that any of the matters contained in the Allmond letter, the bonus calculations, the disputed assertion or the challenged citation format is relied upon by the EEOC and is relevant to the dispositive issues in the Motion for Summary Judgment, it will determine whether the specific information is admissible, at that time, and will note the same in the course of its analysis below. See Leib v. Famous Distrib., 2006 U.S. Dist. LEXIS 5802, **16-17 (S.D. Ohio Feb. 15, 2006) (refusing to strike disputed evidence since very little, if any, evidence with respect to the dispositive issues in the case was contained therein and the court was "confident in its ability to disregard any evidence that is not based on personal knowledge, or any inadmissible, conclusory, speculative or contradictory evidence").

---

[7]The Defendants move to strike the entire Allmond letter, yet do not give the Court the courtesy of pointing out what parts of the letter, if any, the Plaintiff has relied on in the course of its summary judgment briefings.  As indicated, a review of the Defendants' Motion to Strike indicates that many of the points objected to in the Allmond letter are not even addressed in the summary judgment briefings. E.g., Doc. #25 at 7-14.

Therefore, the Defendants' Motion to Strike Certain Assertions and Materials (Doc. #25) is OVERRULED, to the extent the Court later finds that any of the matters contained in the Allmond letter, the bonus calculations, the disputed assertion or the challenged citation format is relied upon by the EEOC in its response to the Motion for Summary Judgment, is relevant to the dispositive issues in that Motion and complies with the applicable Rules of Civil Procedure and Rules of Evidence; otherwise, said Motion is SUSTAINED.

II.     MOTION TO STRIKE AFFIDAVITS (DOC. #51)

The EEOC moves to strike two affidavits that Unitrin offers in support of its Motion for Summary Judgment. Doc. #51.  Some background information is initially helpful to the resolution of this Motion.

On May 15, 2008, the Court conducted a conference call with counsel to discuss various issues, including the lack of proper authentication of documents that had been filed by the parties, in support of and in opposition to Unitrin's Motion for Summary Judgment.  It is clear from the Court's record of those proceedings that the Court instructed the parties to submit properly authenticated supporting documents <u>to which they had referred</u> in their summary judgment briefings, to include documents that had not been previously attached, as well as properly authenticated deposition excerpts that had been previously attached.  In response, the parties timely filed voluminous deposition transcripts and exhibits.

7

Docs. #38-#50.  Unitrin also filed two affidavits (one from Lisa Bage and one from Dan Maloney) that purport to authenticate various pieces of evidence offered in support of its Motion for Summary Judgment, which are attached thereto. Doc. #37.  It is these two affidavits, along with their exhibits, to which the EEOC objects, arguing that both the affidavits and some of the exhibits offer new information not previously relied on by Unitrin. Doc. #51.

Once again, in the interest of judicial economy, the Court is not going to read through the entirety of the affidavits and the eight exhibits, at this juncture. In accordance with the Court's direction to the parties, at the conference call on May 15, 2008, the Court will consider the information in the affidavits only to the extent necessary to properly authenticate the attached documents.  Further, the Court will consider only those attached documents that were specifically referenced by the Defendants in their briefings in support of their Motion for Summary Judgment. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (explaining that, in ruling on a motion for summary judgment, "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").[8]  Any

---

[8]As will be explained in more detail, *infra*, in determining whether a genuine issue of material fact exists, the Court will rely only upon those portions of the depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties in their timely filed summary judgment briefings.

8

documents to which Unitrin did not refer in its original briefing on the Motion for Summary Judgment will not be considered.

Therefore, the EEOC's Motion to Strike Affidavits (Doc. #51) is OVERRULED, to the extent the affidavits contain information necessary to properly authenticate the documents attached thereto and to the extent the attachments were specifically referenced by Unitrin in its timely filed briefing in support of its Motion for Summary Judgment (Doc. #20, Doc. #24); otherwise, said Motion is SUSTAINED.


III.     SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241,

9

1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255.

10

If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

V.    FACTS[9]

A.    Integration of Companies

Allmond originally worked as a senior product manager for Financial

Indemnity Company ("FIC"). Doc. #41 (Allmond Dep.) at 89.  FIC was in the

business of writing non-standard automobile insurance policies. Doc. #43 (Bage

Dep.) at 11.  In 2002, FIC combined with Charter Indemnity Insurance ("Charter")

and became part of a business segment known as Unitrin Speciality. Doc. #50

(Mullen Dep.) at 31.  Upon this integration, Allmond began reporting to Senior Vice

President, Lisa Bage - - - a former Charter employee. Doc. #41 (Allmond Dep.) at

98.  At that time, Allmond wrote to Unitrin's President, John Mullen, to express his

disappointment with his placement under Bage, whom he viewed as being less

qualified than he for the senior management position. Doc. #50, Attach. #9 (E-mail

from Allmond to Mullen, dtd. Dec. 4, 2001).


B.    Incident Involving E-Mail Dated July 29, 2005

In July 2005, Allmond and two other managers formed an interview team

for the purpose of filling an open product manager position. Doc. #41 (Allmond

Dep.) at 128.  After interviewing two candidates (one male over the age of forty,

---

[9]Since this case comes before the Court on the Defendants' Motion for
Summary Judgment, the Court sets forth the facts and circumstances giving rise to
such Motion in the manner most favorable to the Plaintiff, as the party against
whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments,
475 F.3d 783, 790 (6th Cir. 2007).

12

who was already a Unitrin employee, and one female), Allmond e-mailed Bage to

inform her that the team had reached a consensus that the male should be hired.

Id. at 130-34.  On previous hiring decisions with which Allmond had been

involved, when the interviewing team reached a consensus, Bage approved the

hiring decision. Id. at 135-137.  On this occasion, however, Bage responded as

follows:

> After a quick look through this, I'm going to need more information
> before I can approve a hire.  I have contrary evidence on everything
> for [the suggested hire] other than communication.  I need you to
> have some pretty solid examples to help me understand what I'm
> missing.
>
> You also had several other candidates in the pipeline. Have all of those
> been worked so that you are choosing the best of hirable candidates,
> or are you hiring the first qualified candidate you found[?]

Doc. #41, Attach. #2.  At 10:54 p.m. that same evening (July 29, 2005), Allmond

responded to Bage's email (and copied the company President, Mullen, as well as

the COO, Don Southwell, and the HR Director, Dan Maloney), as follows ("July 29

e-mail"):

> Wow, I never expected this answer.  I did not know this was a
> criminal investigation and have no idea what "evidence" you have
> against this over 40 year old man.  I have long[] believed you have
> had a problem with anyone with the old FIC group.  I even mentioned
> this in a memo to John at the beginning of the "Charter" take over.
>
> I agree that there are some viable candidates, "hirable" is a strong
> word.  The [female] candidate we talked to today was terrible, she
> had no related experience but did have a great educational
> background, and if she could have stop[ped] talking for just a moment
> we may have been able to evaluate[] her qualifications.  I talked to

13

> Rick and he told me Cory had the same perception.  It is quite evident
> to me that you are only interested in a female candidate.
>
> We have hired several candidates in the past few years.  If we did not
> know [the suggested male hire], we would have hired him on the
> spot.  I truly believe that you have a prejudice against men any [sic]
> and former FIC employee[s].
>
> I know I just committed corporate suicide, but you know I [feel] good
> and will sleep good tonight.

Id.  Because of the implications of discrimination contained in this e-mail, the

following workday, Unitrin's President commissioned the HR Director, Dan

Maloney, to conduct an investigation into the matter.  Doc. #41 (Allmond Dep.) at

156; Doc. #50 (Mullen Dep.) at 40-42.  Maloney contacted Allmond to discuss the

matter and then summarized the results of their conversation in the following e-

mail ("August 1 e-mail"):

> Thanks for talking with me this afternoon regarding the [July 29 e-
> mail]. [P]er our conversation I understand that you do not [believe
> Bage] is or has ever exhibited an age or gender bias in her employment
> decisions, but rather the concerns expressed [in the July 29 e-mail]
> were just an "overreaction to the pressure of working until 7:00 pm at
> night and working two jobs".
>
> I understand from our conversation that you do feel there has been a
> takeover of FIC by the former Charter organization, but the [July 29 e-
> mail] is just (to use your words) "just ranting" on your part, and there
> is "nothing really going on".
>
> Tom, I want to be sure the statement above represents your true
> feelings.  If you are uncomfortable talking to me for any reason, I
> would encourage you to contact the Corporate Responsibility hotline.
> This resource is staffed by [text cut-off in process of copying].[10]

---

[10]According to Maloney's deposition, the Corporate Responsibility hotline
"was staffed by a third-party administrator, [which employed] individuals [who]

14

> However, if the information above is complete and correct, please respond to this E-mail and let me know so I can close the file on this complaint.

Doc. #41, Attach #3. In response to Maloney's August 1 e-mail, Allmond sent the following ("August 2 e-mail"):

> My true feelings are that I did indeed overreact to a late night working two jobs hoping to hire a replacement for [the previous employee who vacated the product manager position]. I was indeed surprised that [Bage] did not want to extend an offer to [the proposed new hire] based on evidence she had contrary to the findings that I and my commercial counterpart had of him. I did indeed overreact to her memo to me.
>
> I do not believe [Bage] has ever discriminated against a person based on gender.
>
> As for my "ranting" over the "Charter take over" I do believe that we former FIC employees are at a disadvantage for any opportunity (though not based on gender). As I told you "I don't call the shots" and you responded that you do not call them either. "To the victor the spoils" (my words). That is just the way it is. You asked what my inner feelings were to cause the reaction I had. Again, it stems from my belief that we (FIC) were just basically taken over. We (former FIC employees) have lost basically every officer of the company . . . . I guess I am suffering from some paranoia that there is a target . . . on my back (most likely due to the differences in my performance evaluations between the "new regime" and the old).
>
> I do want you to know that after I wrote my response to [Bage], I immediately wanted to recall my E-mail. Unfortunately, our system does not allow a recall unless the person written is on line. I did rant, wrote a response based on [a] stress[] filled emotional response.
>
> I hope that I have not irrevocably ruined my relationship with [Bage], [Mullen], Don and yourself. While I do my best work under pressure, I do tend to get volatile while under the same pressure.

───────────────────

were not employees of Unitrin." Doc. #49 (Maloney Dep.) at 113.

There is no reason for you to do any investigation over a gender
discrimination I stupidly asserted.

Id. This August 2 e-mail concluded Unitrin's investigation into Allmond's

allegations of discrimination. Doc. #49 (Maloney Dep.) at 110-18.

In later deposition testimony, Allmond stated that the August 2 e-mail to

Maloney was "false". Doc. #41 (Allmond Dep.) at 159. Although in that e-mail he

effectively recanted the charges of discrimination in his July 29 e-mail, at his

deposition, he testified that Maloney and Bage were "in cahoots with these

decisions" and, thus, he only told Maloney there was no discrimination "[i]n order

to protect myself, I basically was trying to save my job." Id. at 156-57.

C.    Allmond's Termination

Bage terminated Allmond approximately two weeks after the e-mail

exchange summarized above, on or about August 15, 2005. Doc. #1 (Compl.) ¶ 9.

According to Bage, a number of factors went into the decision to terminate

Allmond, including his July 29 e-mail. Doc. #43 (Bage Dep.) at 58-59. Allmond

first contacted the EEOC about Unitrin's alleged discriminatory conduct via written

correspondence, received by the EEOC on August 31, 2005. Doc. #41 (Allmond

Dep.) at 186.

V.    RETALIATORY DISCRIMINATION

Plaintiff EEOC brings suit, on behalf of Allmond, alleging retaliation for

16

having complained of age and sex discrimination, in violation of Title VII and the ADEA.  Title VII prohibits discrimination in employment on the basis of "race, color, religion, sex, or national origin," while prohibiting retaliatory discrimination against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-2(a)(1), § 2000e-3(a).  Similarly, the ADEA prohibits discrimination in employment, on the basis of age, while prohibiting retaliatory discrimination against an employee "because such individual . . . has opposed any practice made unlawful by [the ADEA] or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(a), (d).

A.    *Prima Facie* Case of Retaliatory Discrimination

In order to establish a *prima facie* case of retaliation, under both Title VII and the ADEA, a plaintiff must demonstrate:

(1) that the plaintiff engaged in a protected activity;

(2) that the defendant had knowledge of the plaintiff's protected conduct;

(3) that the defendant took an adverse employment action towards the plaintiff; and

(4) that there was a causal connection between the protected activity and the adverse employment action.

17

Weigel v. Baptist Hosp., 302 F.3d 367, 381 (6th Cir. 2002) (citation omitted) (as

to ADEA); see also Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th

Cir. 2000) (setting forth same test for Title VII retaliation claims).

As to the first prong of this test (whether the plaintiff engaged in a protected

activity), the Sixth Circuit instructs courts to first consider whether the retaliation

claim is based on an allegation that the employee "has made a charge, filed a

complaint, testified, assisted, or participated in an investigation, proceeding or

hearing under [Title VII or the ADEA], the participation clause; or (2) when an

employee has opposed a violation of [Title VII or the ADEA], the opposition

clause." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th

Cir. 1989) (internal quotation marks omitted) (as to Title VII)[11]; see also Fox v.

Eagle Distrib. Co., 510 F.3d 587, 592 (6th Cir. Tenn. 2007) (applying same

standard, as to the ADEA). "The distinction between employee activities protected

by the participation clause and those protected by the opposition clause is

significant because federal courts have generally granted less protection for

opposition than for participation in enforcement proceedings." Booker, 879 F.2d at

1312.

Thus, in this case, the Court must first determine whether Allmond's

conduct falls within the "participation clause" or the "opposition clause". The

Sixth Circuit indicates that "the instigation of proceedings leading to the filing of a

---

[11]In Booker, the Sixth Circuit construed Michigan's Elliott-Larsen Act in the same manner as Title VII. Booker, 879 F.2d at 1311-12.

complaint or a charge, including 'a visit to a government agency to inquire about filing a charge,' is a prerequisite to protection under the participation clause." Id. at 1313 (citing Polk v. Yellow Freight System, Inc., 801 F.2d 190, 200 (6th Cir. 1986)). Further, "internal correspondence with one's employer does not sufficiently invoke the statutory machinery available under [Title VII] to constitute the filing of a complaint or a charge." Id. Because Allmond did not instigate proceedings leading to the filing of a complaint or a charge prior to his termination, he had not yet "participated" in protected conduct, at that time. Thus, the Court will consider his claim in the context of the opposition clause.

Next, the Court must consider whether Allmond's conduct is protected, because it "amount[ed] to opposition to an unlawful employment practice" by Unitrin. Fox v. Eagle Distrib. Co., 510 F.3d 587, 591 (6th Cir. 2007). "In order to receive protection under the [statute], a plaintiff's expression of opposition must concern a violation of the [statute]." Id.

The Plaintiff contends that Allmond's July 29 e-mail asserted protectible opposition to both sex and age discrimination. Doc. #21 at 4. For ease of analysis, the Court once again sets forth the contents of that e-mail, with certain portions highlighted:

> Wow, I never expected this answer. I did not know this was a criminal investigation and have no idea what "evidence" you have against this over 40 year old man. I have long[] believed you have had a problem with anyone with the old FIC group. I even mentioned this in a memo to John at the beginning of the "Charter" take over.

19

I agree that there are some viable candidates, "hirable" is a strong word.  The [female] candidate we talked to today was terrible, she had no related experience but did have a great educational background, and if she could have stop[ped] talking for just a moment we may have been able to evaluate[] her qualifications.  I talked to Rick and he told me Cory had the same perception.  <u>It is quite evident to me that you are only interested in a female candidate</u>.

We have hired several candidates in the past few years.  If we did not know [the suggested male hire], we would have hired him on the spot.  <u>I truly believe that you have a prejudice against men</u> any [sic] and former FIC employee[s].

I know I just committed corporate suicide, but you know I [feel] good and will sleep good tonight.

Doc. #41, Attach. #2 (emphasis added).  The Court will now proceed, first, with a discussion about the alleged sex discrimination retaliation, followed by an analysis of the alleged age discrimination retaliation.


B.    <u>Engaged in Protected Activity - Opposition to Sex Discrimination</u>

Along with complaints about the perceived continuing impact of the 2002 FIC-Charter consolidation, the July 29 e-mail fairly clearly sets forth an opposition to what Allmond perceived to be sex discrimination ("It is quite evident to me that you are only interested in a female candidate" and "I truly believe that you have a prejudice against men . . . .").  The Court cannot look at the July 29 e-mail in a vacuum, however.  It must also consider the follow-up conversation (and e-mails memorializing the same) between Allmond and the HR Director.  In that follow-up communication, the two men discussed the allegations of sex discrimination made by Allmond, as well as the displeasure Allmond voiced about the 2002 FIC-Charter

consolidation. Doc. #41, Attach #3.  The communication concluded with Allmond acknowledging that he had overreacted and stating that he did not believe that Bage had ever discriminated against a person based on gender. Id.  Based on his concluding statement that "[t]here is no reason for you to do any investigation over a gender discrimination I stupidly asserted," id., Unitrin took no further steps in the investigation.

The Plaintiff makes much of the fact that Allmond "made clear at his deposition [that] his recantation was an effort to save his job." Doc. #21 at 13. This point is irrelevant, however, because the Plaintiff has presented no evidence to indicate that Unitrin had any knowledge of this fact at the time it terminated him.  Rather, at the time of his termination, the only information Unitrin had was that Allmond had sent an e-mail (to his supervisor, as well as the company HR Director, COO and President), alleging gender discrimination, but then immediately recanted this allegation in a follow-up communication with the HR Director.  Thus, at the time of Allmond's termination, he had not opposed any practice made an unlawful employment practice by Title VII (i.e., he had not engaged in protected conduct, in this regard).  The Court will now turn to an analysis of whether Allmond had opposed an unlawful employment practice in the form of age discrimination.

C.    Engaged in Protected Activity - Opposition to Age Discrimination

The Plaintiff also contends that the July 29 e-mail asserted an opposition to

Unitrin's practice of age discrimination.  In so doing, it points to the phrase "this

over 40 year old man."  In the follow-up communication between Allmond and the

HR Director, the subject of age discrimination was not broached.  Thus, Allmond

did not recant any allegation of age discrimination, as he did of sex discrimination,

as previously discussed.  The Court finds the absence of any discussion about this

matter telling, however, in that it indicates that the HR Director (and possibly

Allmond) did not interpret the e-mail as containing an age discrimination allegation.

The Sixth Circuit has had the opportunity to determine whether similar

correspondence was sufficient to constitute an opposition to an unlawful

employment practice.  In Booker v. Brown & Williamson Tobacco Co., 879 F.2d

1304, 1309 (6th Cir. 1989), the plaintiff sent his employer a letter contending that

his supervisor, when referring to African Americans, had stated that "I don't know

if these people can comprehend asset management," and further contesting the

company's complaints about his managerial style, claiming that "this is a case of

ethnocism [sic.], which should be investigated immediately."  In determining that

the plaintiff had not contested an unlawful employment practice in this

correspondence, the Appellate Court found that the allegation that the supervisor

had made the statement, "I don't know if [African Americans] can comprehend

asset management," indicated that the supervisor may be a racist, but was not an

22

allegation that the employer was engaging in an unlawful employment practice. Id. at 1313.  As to the comment that "this is a case of ethnocism [sic.], which should be investigated immediately," the Court assumed that the plaintiff intended to allege discrimination (not being familiar with the word "ethnocism"), but held that "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." Id.

> An employee may not invoke the protections of the Act by making a vague charge of discrimination.  Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination.  In our view, such would constitute an intolerable intrusion into the workplace.

Id.  Thus, the Court concluded that the plaintiff's letter did not fall under the parameters of the opposition clause and, therefore, the plaintiff had not established his *prima facie* case of retaliatory harassment.[12] Id. at 1313-14.

---

[12]In an unpublished opinion, the Sixth Circuit arrived at a similar conclusion when analyzing another employee's letter.  In Willoughby v. Allstate Ins. Co., 2004 U.S. App. LEXIS 14904 (6th Cir. July 14, 2004), the white employee brought suit alleging, in part, that Allstate retaliated against him because he sent them a letter asserting reverse race discrimination.  In its analysis of this claim, the Court looked at a part of the subject letter, which mentioned previous sexual harassment complaints against another employee, but determined that the plaintiff was trying to impeach the other employee's credibility (for making a complaint about the plaintiff's similar conduct), rather than complaining about unequal treatment. Id. at *6.  The Court also highlighted the following language from the letter:

> [An incident for which the plaintiff was disciplined] did not start anywhere close to being a racial event, but for some reason we have managed to escalate it to that level.  Let me give you a few facts for thought.  The ASD staffing is currently 56% African American.  Of the last 12 employees to leave/terminate from ASD, 11 were white.

Just as in <u>Booker</u>, the present facts set forth, at most, merely a vague charge of age discrimination.  The mere reference to an "over 40 year old man" did not catch the eye of the HR Director as warranting discussion about discrimination allegations and, similarly, does not catch the eye of the Court as asserting an opposition to an unlawful employment practice.  Because the July 29 e-mail did not convey anything more than a vague charge of age discrimination, which is insufficient to constitute an opposition to a practice made unlawful by the ADEA, Allmond did not engage in protected conduct by asserting age discrimination opposition.

Because the Plaintiff has not set forth a genuine issue of material fact as to the first prong of its *prima facie* case of retaliatory discrimination (opposition to protected conduct), based on either an assertion of sex or age discrimination opposition, the Defendants' Motion for Summary Judgment (Doc. #20) is SUSTAINED.

---

It might be interesting to look at their exit interviews as a group, rather than one disgruntled employee at a time.

<u>Id.</u> at **6-7.  Like the <u>Booker</u> Court, this Court concluded that this language contained merely a "vague charge of discrimination," which was "insufficient to constitute opposition to an unlawful employment practice," and thus affirmed the district court's grant of summary judgment in favor of Allstate. <u>Id.</u> at *7 (quoting <u>Booker</u>, 879 F.2d at 1313).

24

VI      CONCLUSION

The Defendants' Motion for Summary Judgment (Doc. #20) is SUSTAINED.

The Defendants' Motion to Strike Certain Assertions and Materials (Doc. #25) and

the Plaintiff's Motion to Strike Affidavits (Doc. #51) are SUSTAINED, in part, and

OVERRULED, in part.  Judgment is to be entered on behalf of the Defendants and

against the Plaintiff.

The above captioned cause is hereby ordered terminated upon the docket

records of the United States District Court for the Southern District of Ohio,

Western Division, at Dayton.


September 22, 2008


                                          /s/ Walter Herbert Rice

                                     _____
                                     WALTER HERBERT RICE, JUDGE
                                     UNITED STATES DISTRICT COURT


Copies to:
Counsel of record